United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 06, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-33862** |
| **ABUNDANT LIFE CHIROPRACTIC, P.A.** | § | |
| | § | |
| **Debtor** | § | **CHAPTER 11** |

**ORDER
CONFIRMING DEBTOR(S)' PLAN OF REORGANIZATION
PURSUANT TO 11 U.S.C. § 1191(a)**

The Court held a hearing (the "*Confirmation Hearing*") to consider confirmation of the subchapter V plan of reorganization, ECF No. 75 (the "*Plan*") filed by Abundant Life Chiropractic, P.A. (the "*Debtor*(s)"). Having considered the Plan, testimony, declarations, ballot summary, liquidation analysis and other evidence admitted at the Confirmation Hearing, the arguments of counsel and the applicable legal authorities, the Court hereby confirms the Plan and makes and issues the following findings of fact and conclusions of law (the "*Confirmation Order*").[1]

## I. JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[2] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) this proceeding involves primarily core matters as it "concern[s] the administration of the estate and confirmation of a

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Plan. All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, unless otherwise indicated.

[2] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

chapter 11 plan."[3] Furthermore, this Court may only hear a case in which venue is proper. Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor(s) main chapter 11 case is presently pending in this Court and therefore, venue of this proceeding is proper. The pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order.[4]

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This order supplements those findings and conclusions. If there is an inconsistency, this Order controls.

On August 23, 2024 (the "*Petition Date*"), the Debtor(s) commenced this bankruptcy case (the "*Case*") by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor has continued as a Debtor in possession pursuant to 11 U.S.C. §§ 1108 and 1184

On A u g u s t   2 8 ,   2 0 2 4 , the Office of the United States Trustee filed a Notice of Appointment of Subchapter V Trustee, ECF No. 16, appointing Sylvia Mayer as the subchapter V trustee (the "*Subchapter V Trustee*") pursuant to 11 U.S.C. § 1183(a).

As of the petition date, the Debtor was and continues to be eligible for relief under 11 U.S.C. § 109 and subchapter V of the Bankruptcy Code, and the Debtor is the proper proponent of

---

[3] 11 U.S.C. § 157(b)(2).
[4] *Stern v. Marshall*, 564 U.S. 462 (2011).

the Plan under 11 U.S.C. § 1189.

The Debtor complied with 11 U.S.C. §1189(b). The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan and Confirmation Hearing Notice were each transmitted and served in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

The solicitation of the Plan complied with the Bankruptcy Code and Bankruptcy Rules, was appropriate and satisfactory based upon the circumstances of the Case, was conducted in good faith, and was in compliance with 11 U.S.C. §§ 1125, 1126, and all other applicable sections of the Bankruptcy Code and Bankruptcy Rules.

All parties required to be given notice of the bankruptcy, all deadlines in the Case, the Plan, and the Confirmation Hearing have been provided due, proper, timely, and adequate notice and had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

The Plan complies with 11 U.S.C. § 1190 because it contains a brief history of Debtor's business operations; a liquidation analysis; projections with respect to the Debtor's ability to make the payments under the Plan; and the submission of all or a portion of the subchapter V debtor's post-petition income from future earnings to the supervision and control of the trustee as is necessary for the execution of the plan.

The Debtor, as proponent of the Plan, has meet its burden of proving the applicable elements of 11 U.S.C. §§1191(a) by a preponderance of the evidence.

Accordingly, it is therefore

**ORDERED:** that

1.     The Plan of Reorganization filed by the Debtor on November 21, 2024 (ECF No. 75) and attached hereto as **Exhibit A**, is hereby CONFIRMED and approved in each and every

respect as a consensual plan pursuant to 11 U.S.C. § 1191(a), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order. The Plan shall be effective and binding upon entry of this Confirmation Order but subject to the occurrence of the Effective Date.  The terms of the Plan and the Debtor's(s) or Reorganized Debtor's(s) entry into any related documents and performance thereunder, including, without limitation, all documents necessary to implement the transactions contemplated under the Plan, are hereby approved and authorized. The Debtor(s) and reorganized Debtor(s) are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, agreements and other documents contemplated by the Plan.

2.      To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby overruled.

3.      Pursuant to 11 U.S.C. § 1183(c)(2), not later than fourteen (14) days after Debtor's plan is substantially consummated, Debtor must file with the court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation and file such notice with the Clerk of Court.

4.      In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.      Within three (3) calendar days after entry of this order, the Debtor must serve notice of entry of this Confirmation Order, ("*Notice*"), pursuant to Bankruptcy Rule 3020(c). The Notice must be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor must thereafter promptly file a copy of such Notice with proof of mailing with the Clerk of Court.

6.      The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but

subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on: (a) the Debtor(s); (b) all holders of claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of claims and Interests voted to accept the Plan; and (c) each person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

7.   Notwithstanding anything else to the contrary in the Plan, these provisions will govern the treatment of Montgomery County:

**2-1 Montgomery County ("Montgomery"** pertains to the allowed secured claim of **Montgomery County** in the amount of **$3,281.20 (Claim No. 1-3).** The Montgomery claim is for taxes due for 2019 through 2024 on property of the business and therefore will be paid as follows:

Debtor shall pay the $3,281.20 claim of Montgomery in equal monthly payments, beginning 30 days after the Effective Date of the Plan, with any remaining balance of the claim paid in full on or before August 23, 2029. Montgomery County's claims shall be paid with 12.00% interest per annum, accruing from the Petition Date until paid in full. The monthly payment shall be at least $85.00.

Montgomery taxes due for the 2024 year shall be paid in the ordinary course of business in January 2025, otherwise such taxes shall accrue postpetition statutory interest until paid in full.

In the event the Reorganized Debtors sell, convey or transfer any of the property which is the collateral of the Montgomery claim or post confirmation tax debt, the Reorganized Debtors shall remit such sales proceeds first to Montgomery to be applied to the Montgomery tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to Montgomery prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtors may pre-pay the pre-petition tax debt to Montgomery at any time. The Reorganized Debtors shall have sixty (60) days from the Effective Date to object to Montgomery's claim; otherwise, the Montgomery claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim. Montgomery shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full. Reorganized Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to Montgomery in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Montgomery to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtors fail to make the payments as required in this Plan, Montgomery shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtors' attorney advising of that default and providing the Reorganized Debtors with a period of five (5) calendar days to cure the default.  In the event that the default is not cured within five (5) days, Montgomery may, without further order of this Court or notice to the Reorganized Debtors, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default.  In the event of a second (2nd) default, Montgomery may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

8.   Notwithstanding anything else to the contrary in the Plan, these provisions will govern the treatment of Class 6 Claimants:

**Class 6 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years according to the projections in Exhibit B. Creditors shall receive monthly disbursements based on the projection distributions of each 12-month period (See Exhibit "A"). Debtor will distribute $57,500.00 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan, including the under-secured claim portions.  The Debtor's General Allowed Unsecured Claimants will receive 9.17% of their allowed claims under this plan.  Any potential rejection damage claims from executory contracts that are rejected in this Plan will be added to the Class 6 unsecured creditor pool and will be paid on a pro-rata basis. See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 9.17% of Total Claim |
|---|---|---|
| ADT Commercial | $631.00 | $58.00 |
| Amegy Bank | $4,463.00 | $409.00 |

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 9.17% of Total Claim |
|---|---|---|
| Bankers Healthcare Group | $111,980.00 | $10,269.00 |
| Greenwoods Equipment Finance | $23,556.00 | $2,160.00 |
| CCMR3 | $10,000.00 | $917.00 |
| Cranford X-Ray Company | $536.00 | $49.00 |
| Farmers Insurance | $265.00 | $24.00 |
| Landauer Inc | $423.00 | $38.79 |
| Metragen II Ltd | $245.00 | $22.00 |
| Research New Trails Partners LTD | $30,602.00 | $2,806.00 |
| US Small Business Admin – SBA | $444,256.00 | $40,738.00 |
| Totals: | $626,957.00 | $57,500.00 |

9.      American Express account ending in 6005 that was included on Schedule F is a personal account held by Debtor's principal Christopher Zaino, and not an account held by the Debtor.  American Express is not a creditor in this case and will not receive payments under the Plan.

10.      The final paragraph of Article XIV of the Plan shall be amended:

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor.  Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court and the creditor will be permitted to pursue recovery against the Debtor for the original amount of their Allowed Claim, less any payments received prior to the default.

11.     All of the Debtor'(s) assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtor(s) pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order.

12.     The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

13.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

14.     Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are

nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

15.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtor will not be discharged of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C. § 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtor is an individual; and (iii) to the extent provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

16.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

17.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

18.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor

shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

19.     No later than fourteen (14) calendar days from the Effective Date of the confirmed Plan, all professionals, including the Subchapter V Trustee, must file all final fee applications, pursuant to Fed. R. Bankr. P. 2016; and Debtor must file a motion for final decree, pursuant to Fed. R. Bankr. P. 3022 and 11 U.S.C. § 1106(a)(7).

20.     Pursuant to 11 U.S.C. § 1183(c)(2), not later than 14 days after Debtor's plan is substantially consummated, Debtor must file with the court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation and file such notice with the Clerk of Court.

21.     Upon substantial consummation of the Plan, the duties of the Subchapter V Trustee in the Debtor's bankruptcy case shall terminate as provided under 11 U.S.C. § 1183(c)(1). Nevertheless, the Subchapter V Trustee is not discharged pursuant 11 U.S.C. § 350(a) until such time as the Court enters its final decree and closes the case.

22.     Not later than sixty (60) days after the Plan has been substantially consummated the Subchapter V Trustee must file with the Clerk of Court a Report of No Distribution (NDR) or Final Report (TFR).

23.     Debtor must request a hearing date on all final motions including the motion for final decree.

24.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in the Plan, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents,

10

instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control.

25.    This Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.

Signed: January 06, 2025

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-33862** |
| **ABUNDANT LIFE CHIROPRACTIC, P.A.** | § | |
| | § | |
| Debtor | § | **CHAPTER 11** |

## DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

### ARTICLE I
### INTRODUCTION

### Identity of the Debtor

Abundant Life Chiropractic, P.A. ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division on August 23, 2024. The Debtor manages and operates a Wellness Chiropractic Practice business. This Plan ("Plan") proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

### Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

1

EXHIBIT A

## Explanation of the Confirmation Process

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

## Voting Procedures

**Unimpaired Class**.  Claimants in Class 1, 2, 3, 4 and 8 are not impaired under the Plan.  Such Classes are deemed to have accepted the Plan.

**Impaired Class**.  The Class 5, 6 and 7 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor is seeking the acceptance of the Plan by Claimants in Class 5, 6 and 7. Each holder of an Allowed Claim in Class 5, 6 and 7 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com.  To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Summary of Plan

Debtor's Plan of Reorganization provides for the continued operations of the Debtor in order to make payments to its creditors as set forth in this Plan.  Debtor seeks to confirm a consensual plan of reorganization but is prepared to confirm this plan pursuant to § 1191(b) if necessary.

## Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on

2

account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.      **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.      **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.      **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

3

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. **"Case"** shall mean this Chapter 11 case.

7. **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. **"Claimant"** shall mean the holder of a Claim.

9. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13. **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14. **"Creditor"** shall mean any person having a Claim against Debtor.

4

15.     **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean Abundant Life Chiropractic, P.A.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

18.     **"Effective Date"** The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

19.     **"Entity"** shall include Person, estate trust, and governmental unit.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

22.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, August 23, 2024.

23.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified, or supplemented.

24.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

25.     **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

26.     **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

27.     **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent

of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

      28.    **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

      29.    **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

      30.    **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

      31.    **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

**ARTICLE III**
**REPRESENTATIONS**

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE PLAN BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

Abundant Life Chiropractic, P.A. started operations in June 2005. Debtor's operations is a chiropractic wellness office. Debtor elected to file a chapter 11 reorganization as the best means to resolve the current liabilities of the company and determine the secured portions of those creditors.

### Future Income and Expenses Under the Plan

The Debtor filed this case on August 23, 2024. Debtor proposes to pay allowed unsecured based on the liquidation analysis and cash available. Debtor anticipates having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan. Attached hereto as Exhibit "A" are projections of gross income, expenses, and operating income for the next five years. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100.00% by Christopher R. Zaino. Ownership interest will remain unchanged following confirmation.

## ARTICLE V

## ANALYSIS AND VALUATION OF PROPERTY

Debtor's operations is a chiropractic wellness office. Debtor's assets include its cash on hand, office furniture, equipment and a vehicle. There are partially secured creditors based on the liquidation analysis and UCC filings. Any secured creditor not treated in this Plan as fully secured are therefore under secured.

A liquidation analysis of the Debtor's assets is attached hereto as Exhibit "B".

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business. The Debtor's Plan will break the existing claims into six classes of Claimants. These claimants will receive cash repayments over a period of time beginning on or after the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants Allowed Administrative Claims of Professionals and Subchapter V Trustee** These claims will be paid in full by the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $30,000.00.

8

**Class 2 Claimant** **Priority Tax Claims (This Claim is unimpaired)** Allowed Priority Claims are for estimated tax returns. This claim is secured and the amounts are based on estimated returns and will be paid on the effective date as to the actual amount owed. The following class contains Debtor's estimated tax priority claim for pre-petition estimated amounts and the proposed treatment under the Plan:

**2-1 Montgomery County ("Montgomery"** pertains to the allowed secured claim of **Montgomery County** in the amount of **$3,336.39 (Claim No. 1-2).** The Montgomery claim is for taxes due for 2019 through 2023 property of the business and therefore will be paid as follows:

Debtor shall pay the $3,336.39 claim of Montgomery over 60 equal monthly payments beginning 30 days after the Effective Date of the Plan at 12.00% per annum. The monthly payment shall be $74.22.

Montgomery taxes due for the 2024 year shall be paid in the ordinary course of business in January 2025.

In the event the Reorganized Debtors sell, convey or transfer any of the property which is the collateral of the Montgomery claim or post confirmation tax debt, the Reorganized Debtors shall remit such sales proceeds first to Montgomery to be applied to the Montgomery tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to Montgomery prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtors may pre-pay the pre-petition tax debt to Montgomery at any time. The Reorganized Debtors shall have sixty (60) days from the Effective Date to object to Montgomery's claim; otherwise, the Montgomery claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim. Montgomery shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full. Reorganized Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to Montgomery in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Montgomery to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtors fail to make the payments as required in this Plan, Montgomery shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtors' attorney advising of that default and providing the Reorganized Debtors with a period of five (5) calendar days to cure the default. In the event that the default is not cured within five (5) days, Montgomery may, without further order of this Court or notice to the Reorganized Debtors, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, Montgomery may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**2-2 Woodlands Metro Center MUD ("Woodlands Metro MUD"** pertains to the allowed secured claim of **Woodlands Metro Center MUD** in the amount of **$88.73 (Claim No. 3-1).** The Woodlands Metro MUD claim is for estimated taxes due for 2024 property of the business and therefore will be paid as follows:

Woodlands Metro MUD tax due for the 2024 year shall be paid in the ordinary course of business in January 2025.

In the event the Reorganized Debtors sell, convey or transfer any of the property which is the collateral of the Woodlands Metro MUD  claim or post confirmation tax debt, the Reorganized Debtors shall remit such sales proceeds first to Woodlands Metro MUD  to be applied to the Woodlands Metro MUD  tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to Woodlands Metro MUD  prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtors may pre-pay the pre-petition tax debt to Woodlands Metro MUD at any time.  The Reorganized Debtors shall have sixty (60) days from the Effective Date to object to Woodlands Metro MUD's claim; otherwise, the Woodlands Metro MUD claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim.  Woodlands Metro MUD shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full.  Reorganized Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to Woodlands Metro MUD in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Woodlands Metro MUD to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtors fail to make the payments as required in this Plan, Woodlands Metro MUD shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtors' attorney advising of that default and providing the Reorganized Debtors with a period of five (5) calendar days to cure the default.  In the event that the default is not cured within five (5) days, Woodlands Metro MUD may, without further order of this Court or notice to the Reorganized Debtors, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default.  In the event of a second (2nd) default, Woodlands Metro MUD may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**2-3 The Woodlands Road Utility District #1 ("Woodlands RUD #1"** pertains to the allowed secured claim of **The Woodlands Road Utility District #1** in the amount of **$143.84 (Claim No. 4-1).** The Woodlands RUD #1 claim is for estimated taxes due for 2024 property of the business and therefore will be paid as follows:

The Woodlands RUD #1 tax due for the 2024 year shall be paid in the ordinary course of business in January 2025.

In the event the Reorganized Debtors sell, convey or transfer any of the property which is the collateral of the Woodlands RUD #1 claim or post confirmation tax debt, the Reorganized Debtors shall remit such sales proceeds first to Woodlands RUD #1 to be applied to the Woodlands RUD #1 tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to Woodlands RUD #1 prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtors may pre-pay the pre-petition tax debt to Woodlands RUD #1 at any time. The Reorganized Debtors shall have sixty (60) days from the Effective Date to object to Woodlands RUD #1's claim; otherwise, the Woodlands RUD #1 claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim. Woodlands RUD #1 shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full. Reorganized Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to Woodlands RUD #1 in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Woodlands RUD #1 to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtors fail to make the payments as required in this Plan, Woodlands RUD #1 shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtors' attorney advising of that default and providing the Reorganized Debtors with a period of five (5) calendar days to cure the default. In the event that the default is not cured within five (5) days, Woodlands RUD #1 may, without further order of this Court or notice to the Reorganized Debtors, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, Woodlands RUD #1 may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**Class 3 Claimant** Priority Tax Claim for the Texas Workforce Commission and their **respective entities.** Allowed Priority Claim is for returns or estimated returns. Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Texas Workforce Commission(the "Texas Workforce Commission"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Workforce Commission in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Texas Workforce Commission to pursue any non-debtor third parties for tax debts or claims, and the Texas Workforce Commission specifically opt out of any third party releases, if any; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Texas Workforce Commission's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Workforce Commission, the interest rate shall be the statutory interest rate, currently 8.75% per annum; and (5)  nothing provided in the Plan or Confirmation Order impacts the governmental claims bar date, and Texas Workforce Commission may amend their claims at any point.

The Texas Workforce Commission shall not be required to file any proof of claim, motion, or request for payment in order to be paid any Administrative Claims for taxes that arise or have arisen in the ordinary course of the Debtor's business, including all post-petition taxes incurred by the Debtor after the Petition Date. All Administrative Claims owed to the Texas Workforce Commission shall be paid in full with applicable interest through the date payment is made on or before the Effective Date, or as otherwise agreed by the Texas Workforce Commission, whichever is the respective agency claimant for such Administrative Claim. If any Administrative Claim owed to the Texas Workforce Commission is not due on the Effective Date, then such Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law.

All priority claims owed to the Texas Workforce Commission shall be paid in full either (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Debtor's bankruptcy petition date; or (3) as otherwise agreed to by the Texas Workforce Commission, whichever is the relevant agency to the claim at issue. The Texas Workforce Commission's priority tax claims shall accrue interest at the statutory rate of interest, currently 8.75% per annum, from the Plan's Effective Date until paid in full.

   **3-1 Texas Workforce Commission (Claim No. 2-2) (This claim is not impaired)** is for Unemployment Tax Estimated Return 2023 and 2024 in the amount of $1,853.45.  The Debtor will pay this claim, payment will be pursuant to these terms: Proof of Claim #2-2 shall be paid in full in equal monthly installments of principal and interest no later than sixty (60) months after the Debtor's bankruptcy petition date (being August 2029, or as otherwise agreed to by the Texas Workforce Commission. Equal monthly installments of principal and interest at 8.75% per annum are to be paid beginning 30 days after the Effective Date and continue until paid in full. The monthly payment amounts for Proof of Claim #2-2 shall be at least $41.65.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtor of Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within five (5) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court.  The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

**Class 4 Claimant** **Priority Tax Claim (This claim is not impaired)** Allowed Priority Claim is for WT-FICA taxes. The Internal Revenue Service claim is a priority debt, and the amounts are based on returns and estimated returns and will be paid over the plan term. The following class contains Debtors' tax priority claim for pre-petition amounts and the proposed treatment under the Plan:

**4-1 Internal Revenue Service** has a secured and priority tax claim in the total amount of $10,000.00 (Claim No. 6-1). The claim is for an unfiled WT-FICA return for tax period 9/30/2024. The debtor will promptly file this return by the Effective Date of the Plan so that the Internal Revenue Service may amend their proof of claim to show that now amount is due. If an amount is still due after the Internal Revenue Service amends their claim, then the Debtor shall pay the amount due within 30 days of an amended claim filed in this case.

**Class 5 Claimant – Secured Claim (These claims are impaired)** Allowed Secured Claim is secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan:

**5-1 Greenwoods Equipment Finance, LLC (Claim No. 7-1)** filed a secured claim for $48,556.10. Greenwoods was secured by two (2) DRX9000 Lumbar Systems and two (2) cervical systems. The Court granted permission for Debtor to surrender this collateral (See ECF No. 69). Counsel for Greenwoods informed Debtor's counsel that the collateral has been sold for $25,000.00. Therefore, Greenwoods now has a fully unsecured claim of $23,556.10 which will be pain in Class 6 of this Plan.

**5-2 U.S. Small Business Administration aka SBA (No Claim Filed)** has a secured claim amount of $474,409.89. The SBA asserts it is fully secured by the Debtors business property pursuant to a UCC Lien that was recorded on May 26, 2020, which appears to put this claim in Lien Position 1. The Debtor will pay the secured value of the claim of $30,153.72 over 60 equal monthly payments at 3.75% per annum at a monthly payment of $551.93. The remaining under secured portion of the SBA claim in the amount of $444,256.17 will be paid in Class 6 of this Plan.

**5-3 Bankers Healthcare Group (Claim No. 5-1)** has an alleged secured claim amount of $111,980.49. The Bankers Healthcare Group asserts it is fully secured by the Debtors business property pursuant to a UCC Lien that was recorded on September 27, 2022, which puts this claim in Lien Position 2. This claim is fully under secured and will be treated in Class 6 of this Plan.

**Class 6 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years according to the projections in Exhibit B. Creditors shall receive monthly disbursements based on the projection distributions of each 12-month period (See Exhibit "A"). Debtor will distribute $57,500.00 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan, including the under-secured claim portions. The Debtor's General Allowed Unsecured Claimants will receive 8.12% of their allowed claims under this plan. Any potential rejection damage claims from executory contracts that are rejected in this Plan will be added to the Class 6 unsecured creditor pool and will be paid on a pro-rata basis. See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 8.12% of Total Claim |
|---|---|---|
| ADT Commercial | $631.00 | $51.28 |
| Amegy Bank | $4,463.00 | $362.69 |
| AMEX | $80,594.00 | $6,549.57 |
| Bankers Healthcare Group | $111,980.00 | $9,100.19 |
| Greenwoods Equipment Finance | $23,556.00 | $1,914.31 |
| CCMR3 | $10,000.00 | $812.66 |
| Cranford X-Ray Company | $536.00 | $43.56 |
| Farmers Insurance | $265.00 | $21.54 |
| Landauer Inc | $423.00 | $34.38 |
| Metragen II Ltd | $245.00 | $19.91 |
| Research New Trails Partners LTD | $30,602.00 | $2,486.91 |
| US Small Business Admin – SBA | $444,256.00 | $36,103.01 |
| Totals: | $707,551.00 | $57,500.00 |

**Class 7 Insider (Impaired)** Christopher Zaino is the only creditor that is an insider. Christopher Zaino has an unsecured claim of $282,380.00. Debtor's total payments to Christopher Zaino shall total $0.

14

**Class 8 Equity Interest Holders (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain ownership in the Debtor. Class 8 Claimants are not impaired under the Plan.

## ARTICLE VII
## CLAIMS OBJECTION PROCESS

### Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was November 1, 2024. The Bar Date for governmental units to file Proof of Claims with the Bankruptcy Clerk is not later than 180 days from petition date.

### Effect of Bar Date.

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### Standing.

Following the Effective Date, the Debtor shall have standing to object to Claims.

### Objection Deadline.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

### Allowance of Claims.

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.   Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that Debtors deems appropriate.

B.   Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is  Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

C.   Vesting of Assets.

Upon the Effective Date, all assets of the Estate shall vest in the Debtor, except as otherwise provided in the Plan. If the Debtor or Reorganized Debtor defaults in performing under the provisions of the Plan and the Case is converted to Chapter 7, all property vested in the Debtor, and all subsequently acquired property owned as of or after the conversion date, shall revest and constitute property of the bankruptcy estate of in the Chapter 7 case.

D.   Discharge.

1.   Consensual Plan

A consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtors will not be discharged from any debt imposed by this Plan.

16

2. Non-consensual Plan

A non-consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtor is unable to get all impaired classes of creditors to vote in favor of the Plan, Debtor will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtor's Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (a) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

E. Injunction Against Interference with Plan.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest from Debtor except as otherwise provided in the Plan.

## ARTICLE IX
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

If the Plan is confirmed under section 1191(a), the Debtor, from the Petition Date to the Effective Date, shall timely file operating reports with the Bankruptcy Court for each month (including any fraction thereof) in a form reasonably acceptable to the U.S. Trustee.

If the Plan is confirmed under section 1191(b), the Reorganized Debtor or Disbursing Agent, after the Effective Date, shall timely file post-confirmation reports with the Bankruptcy Court for each quarter (including any fraction thereof) in a form reasonably acceptable to the U.S. Trustee until the Case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

No later than 14 days after the Plan is substantially consummated, the Debtor shall file with the Court and serve upon the Subchapter V Trustee, U.S. Trustee, and all parties in interest, a notice of substantial consummation of the Plan as required under 11 U.S.C. §1183(c)(2).

After (i) the estate is fully administered, (ii) the Subchapter V Trustee has filed a final report and obtained an award of compensation, and (iii) the discharge has been entered (in the event of a plan confirmed under section 1191(b)), the Reorganized Debtor or the Disbursing Agent shall file with the Bankruptcy Court a motion for final decree to close the Case.

## ARTICLE X
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE XII
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $30,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately **$707,551.00**. The Debtor's assets include funds in the bank, office equipment, inventory, and accounts receivable. Unsecured creditors are receiving approximately 8.12% of their claims under the terms of the Plan.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

Debtor has rejected the Building Lease (ECF No. 62).

Debtor further rejects the verbal business association with Scott Dorrity. Debtor has no continued association or arrangement with Dorrity and has already relocated operations to 4810 W Panther Creek Dr #105, The Woodlands, TX 77381.

18

## ARTICLE XIV
## <u>EVENTS OF DEFAULT AND EFFECT THEREOF</u>

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

> Robert "Chip" Lane
> The Lane Law Firm
> 6200 Savoy Drive
> Suite 1150
> Houston, Texas 77036-3300

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor.  Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE XV
## <u>DISCHARGE</u>

Upon Confirmation pursuant to 11 U.S.C. §1191(a)  to the extent that a Claim or Debt has  been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XVI
## <u>RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN</u>

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan.  The Plan contemplates that there will be excess funds to pay Creditor Claims.

Except as otherwise provided in the Plan, or for obligations or liabilities required to be paid pursuant to this Plan or the Confirmation Order, Confirmation of the Plan shall result in the issuance of a permanent injunction prohibiting all Entities who have held, hold, or may hold Claims that have been discharges from commencing or continuing any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor that arose prior to the Confirmation Date.

## ARTICLE XVII
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Dated: November 21, 2024

Respectfully submitted,

Abundant Life Chiropractic, P.A.

By: */s/Christopher Zaino*
Christopher Zaino, Owner

20

| Ordinary Income/Expense | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Total Revenue | $336,000.00 | $346,080.00 | $356,462.40 | $367,156.27 | $378,170.96 |
| | | | | | |
| **Expenses** | | | | | |
| Owner Distribution | $104,400.00 | $104,400.00 | $104,400.00 | $104,400.00 | $104,400.00 |
| Payroll Taxes | $10,614.00 | $10,932.42 | $11,260.39 | $11,598.20 | $11,946.15 |
| Repair & Maintenance | $2,400.00 | $2,472.00 | $2,546.16 | $2,622.54 | $2,701.22 |
| Subcontractors | $7,500.00 | $7,725.00 | $7,956.75 | $8,195.45 | $8,441.32 |
| Vehicle Expenses | $3,000.00 | $3,090.00 | $3,182.70 | $3,278.18 | $3,376.53 |
| Malpractice | $2,800.00 | $2,884.00 | $2,970.52 | $3,059.64 | $3,151.42 |
| Auto Insurance | $4,032.00 | $4,152.96 | $4,277.55 | $4,405.88 | $4,538.05 |
| Business Insurance - CGL, Equipment | $4,032.00 | $4,152.96 | $4,277.55 | $4,405.88 | $4,538.05 |
| Medical Supplies | $36,000.00 | $37,080.00 | $38,192.40 | $39,338.17 | $40,518.32 |
| Dues, Subscriptions, Software | $18,000.00 | $18,540.00 | $18,540.00 | $18,955.00 | $19,523.65 |
| Office Rent | $54,000.00 | $54,000.00 | $57,000.00 | $57,000.00 | $57,000.00 |
| Bank Service Charges | $1,320.00 | $1,359.60 | $1,400.39 | $1,442.40 | $1,485.67 |
| Marketing Events | $7,200.00 | $7,416.00 | $7,638.48 | $7,867.63 | $8,103.66 |
| Postage and Shipping | $360.00 | $370.80 | $381.92 | $393.38 | $405.18 |
| Health Insurance | $6,000.00 | $6,180.00 | $6,365.40 | $6,556.36 | $6,753.05 |
| Travel and Meals - Speaking Engagements & Seminars | $14,400.00 | $14,832.00 | $15,276.96 | $15,735.27 | $16,207.33 |
| Utilities | $6,000.00 | $6,180.00 | $6,365.40 | $6,556.36 | $6,753.05 |
| Credit Card Merchant Fees | $14,520.00 | $14,750.00 | $15,192.50 | $15,648.28 | $16,117.72 |
| Accounting Services | $12,000.00 | $12,360.00 | $12,730.80 | $13,112.72 | $13,506.11 |
| Office Supplies | $4,800.00 | $4,944.00 | $5,092.32 | $5,245.09 | $5,402.44 |
| Advertising - targeted mailers | $6,000.00 | $6,180.00 | $6,365.40 | $6,556.36 | $6,753.05 |
| Contracted Services | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 |
| | | | | | |
| **Total Expense** | -$325,378.00 | -$330,001.74 | -$337,413.59 | -$342,372.80 | -$347,621.98 |
| **Net Operating Income** | **$10,622.00** | **$16,078.26** | **$19,048.81** | **$24,783.47** | **$30,548.98** |

| PLAN PAYMENTS | | | | | |
|---|---|---|---|---|---|
| Claims | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
| **Priority  Claims** | | | | | |
| Montgomery County | $890.64 | $890.64 | $890.64 | $890.64 | $890.64 |
| Woodlands Metro Center | $88.73 | | | | |
| The Woodlands RUD #1 | $143.84 | | | | |
| Texas Workforce Commission | $499.80 | $499.80 | $499.80 | $499.80 | $499.80 |
| | | | | | |
| **Secured Claims** | | | | | |
| SBA | $6,623.16 | $6,623.16 | $6,623.16 | $6,623.16 | $6,623.16 |
| | | | | | |
| **Allowed General Unsecured Claims** | | | | | |
| Unsecured to Receive  8.12% | $2,000.00 | $7,500.00 | $10,300.00 | $16,000.00 | $21,700.00 |
| | | | | | |
| **Annual Plan Payment** | $10,246.17 | $15,513.60 | $18,313.60 | $24,013.60 | $29,713.60 |

| PROJECTED DISPOSABLE INCOME (After Plan Payments) | | | | | |
|---|---|---|---|---|---|
| | **$375.83** | **$564.66** | **$735.21** | **$769.87** | **$835.38** |

EXHIBIT A

**Ex. B - Projected Liquidation Analysis - 24-33862**

| Asset | Gross Value on Petition Date | Current Gross Value | Asset Debts | Net Value | Lienholder |
|---|---|---|---|---|---|
| | | | | | |
| Cash | $1,297.00 | $14,590.14 | $0.00 | $14,590.14 | |
| **Office Furniture** (Desks, Chairs, Filing Cabinets, Computers, Monitors, Phones, Printer and Copier | $1,900.00 | $1,900.00 | $0.00 | $1,900.00 | |
| | | | | | |
| **MACHINERY/VEHICLES** | | | | | |
| 2014 Land Rover | $12,000.00 | $12,000.00 | | $12,000.00 | |
| X-Ray Machine | $700.00 | $700.00 | | $700.00 | |
| | | | | | |
| DRX9000 Lumbar System - Decompression Table (2) | $40,000.00 | Sold | Sold | $0.00 | |
| Omni Chiropractic Tables (4) | $1,500.00 | $1,500.00 | | $1,500.00 | |
| Vibration Plates (10) | $1,500.00 | $1,500.00 | | $1,500.00 | |
| Rehab Equipment | $500.00 | $500.00 | | $500.00 | |
| | | | | | |
| License - X-Ray Certification | $0.00 | $0.00 | | $0.00 | |
| Patient List | $1.00 | $1.00 | | $1.00 | |
| | | | | | |
| **TOTAL** | **$59,398.00** | **$19,555.14** | **$0.00** | **$19,555.14** | |
| | | | | | |
| SBA | | | $474,409.89 | $0.00 | |
| Bankers Healthgroup | | | $111,980.49 | $0.00 | |
| | | | | | |
| **Remaining Amount Available for Unsecured Creditors** | | | | $0.00 | |
| **Total Amount of Allowed General Unsecured Claims (includes the undersecured portions of the Schedule D secured creditors)** | | | | **$707,551.00** | |
| | | | | | |